IRWIN *v.* PHŒNIX ACCIDENT & SICK BENEFIT ASSOCIATION.

1. ACCIDENT INSURANCE—CONDITIONS—UNNECESSARY EXPOSURE TO DANGER.

   A condition in an accident-insurance policy against liability for injuries caused by "voluntary or unnecessary exposure to danger" is limited to cases of intentional exposure to recognized danger, and does not include acts of mere thoughtlessness on the part of the insured.[1]

2. SAME—NEGLIGENCE—EVIDENCE.

   In an action on a policy so conditioned, it appeared that the insured was at work on a scaffold 30 feet high, laying brick; that the scaffold had been supported by a horse at each end and one in the middle; but that the horse at one end had since been removed, so that, when the insured stepped to that end of the scaffold, he was precipitated to the ground and killed.  The contractor testified that, just before the accident, he cautioned the deceased to "look out for those loose ends,"

---

[1] As to voluntary exposure to unnecessary danger within the meaning of such conditions, see note to *Fidelity & Casualty Co.* v. *Chambers*, (Va.) 40 L. R. A. 432.

but that he was not sure that deceased heard him. *Held,*
that there was no evidence of negligence on the part of the
deceased, and that a verdict was properly directed for
plaintiff.

Error to Muskegon; Russell, J. Submitted June 7,
1901. Decided July 10, 1901.

*Assumpsit* by Mary J. Irwin against the Phœnix Acci-
dent & Sick Benefit Association upon a policy of insur-
ance. From a judgment for plaintiff on verdict directed
by the court, defendant brings error. Affirmed.

*George W. Bridgman,* for appellant.

*Sessions & Sutherland,* for appellee.

- MONTGOMERY, C. J. Plaintiff recovered in an action
on an accident policy issued to her son, George F. Irwin,
in which policy plaintiff was named as beneficiary in case
of death. The defense was that the death of George F.
Irwin was caused by voluntary and unnecessary exposure
to danger. The policy, by reference to the application,
exempted the company from liability in case of either
voluntary or unnecessary exposure to danger. It is con-
tended that this language is such as to distinguish it from
*Johnson* v. *Accident Co.,* 115 Mich. 86 (72 N. W. 1115,
69 Am. St. Rep. 549); and counsel cites the case of
*Shevlin* v. *Accident Ass'n,* 94 Wis. 180 (68 N. W.
866, 36 L. R. A. 52), in which an exception of ex-
posure to unnecessary danger was held to exempt the
company from liability for an injury resulting from
exposure to unnecessary danger when such exposure was
attributable to the negligence of the assured. The facts
of that case show a case of gross negligence. We think
the language of this contract indicates the purpose of
limiting the exception to cases of exposure to recognized
dangers, and does not exempt the company from mere
thoughtlessness on the part of the assured. The words
"unnecessary exposure" are coupled with "voluntary,"

and, while the disjunctive is used, we think this is not conclusive of the construction. The word "exposure," used in this connection, implies an intentional act. We do not think the case is distinguishable from *Johnson's Case.*

Was the court justified in withdrawing the case from the jury? The deceased met his death while working as a mason. The evidence shows that the support had been removed from one end of the scaffolding, and that, in stepping on the unsupported end of the boards, he fell to the ground and was killed. Alexander McIntosh, the contractor, testified:

"I had been on the scaffold not to exceed two or three minutes before the accident,—it certainly could not have exceeded five minutes,—and had a conversation with George Irwin."

He went on the scaffold to give Irwin some instructions about the work.

"*Q.* Did you say anything to him about the scaffold?
"*A.* I might have remarked just as I got on the scaffold—It struck me very forcibly why that horse wasn't there. There were previous orders given distinctly to have it there, and, in my coming close to him, I noticed that the horse was out of there. * * * He [George Irwin] just turned around, and he reached me his hand,—gave me a jerk up. Just as he reached me his hand, I just made a casual remark. I had noticed at that instant that the horse had been removed from there. I says, 'George, look out for those loose ends.' Whether he took any special notice of it or not, is something beyond my comprehension. I supposed at the time he did, but he might not have.
"*Q.* You called his attention to it, and said, 'Look out for those loose ends,' referring to that—
"*A.* Referring to that particular place.
"*Q.* What was the reason for making the remark to George Irwin, to look out for those loose ends?
"*A.* If he stepped out there, there was danger."

It is doubtful whether deceased heard McIntosh, and it is also doubtful whether he understood what was meant

by "loose ends." My Brethren are of the opinion that there was no evidence of negligence, and that the instruction directing a verdict was authorized.

Judgment affirmed.

The other Justices concurred.