## CLAUSES OF EXEMPTION IN ACCIDENT INSURANCE POLICIES.

[Circuit Court of Mahoning County.]

THE NORTH AMERICAN ACCIDENT INSURANCE CO., CHICAGO, ILL.,
v. IDA PAINE GULICK.

Decided, October Term, 1903.

*Accident Insurance—Clauses of Exemption—Limitations Thereon—The Burden on the Company.*

1. An accident insurance company, relying on the exemption clause in its policy, must show by a preponderance of evidence that the insured unnecessarily and voluntarily exposed himself to a known danger, resulting in the accident on account of which suit is brought.

2. A proviso exempting the company from liability in the event of an accident due to an "unnecessary or negligent exposure to obvious dangers," does not include voluntary exposure to a necessary danger or involuntary exposure to an unnecessary danger; and if the accident was one as to the circumstances of which fair-minded persons may differ, a finding against the company should not be disturbed.

COOK, J.; LAUBIE, J., and BURROWS, J., concur.

Ida Paine Gulick was the beneficiary in an accident policy upon the life of Horatio F. Gulick. Mr. Gulick was killed at Woods

Run station in Allegheny county, Pa., close to Allegheny City. At the time he was killed he held this accident policy. And the controversy arises upon the proper construction of the language of the policy, but as we take it more particularly in the ascertainments of the facts as to his death.

We have examined the evidence of John R. Yeagley with a good deal of care; been over it several times. In the first instance, possibly, it would be somewhat difficult to understand him, or his testimony, in its entirety. He was the only man that saw Mr. Gulick immediately before the accident, and is the only witness that throws any light upon the actual manner of death.

At Woods Run station there were four tracks. There was a platform, according to the testimony, between tracks 1 and 2 and tracks 3 and 4. These tracks ran parallel with the railroad tracks. These platforms were 100 feet long, and there was another platform that ran at right angles, or a passage way or crossing, called a platform, five feet wide that ran across the tracks.

Gulick went to the station house that night, or evening, for the purpose of taking passage home, going to the west, on the accommodation train. At the time the train went west, the express train coming east came along; they met at the station, or passed there, or at least did that night. Gulick was going to take passage as I have said, on the west bound train, and is supposed to have been killed, and indeed we think the evidence shows almost conclusively that he was killed by the express train going east.

Now, what were the facts of his killing as detailed by Yeagley? Yeagley says, by a proper construction of his testimony, that he first saw him upon the platform—that is, the platform of the station house; that he went from the five-foot passageway to the platform running parallel between the tracks, 1 and 2, and that he was standing upon the platform as he passed it, about 18 feet below the station, as I take it, about 18 feet between or south possibly, or below, or whichever direction it was, this passageway of five feet. When he was standing there, or as he went to that point, Mr. Yeagley said to him, take care, he would get injured or killed, or something to that effect; he said he knew his business, or words to that effect.

Now Yeagley says he was standing there upon the platform as the express was coming towards him, coming in that direction; that the headlight could be seen, and of course Gulick could see it if it was coming in that direction; how far off, as Gulick estimated the distance, we do not know—no one knows. There he is left upon that platform between tracks 1 and 2, he having to go over track number 2, that the express train was coming on going east, in order to get to his platform between tracks 3 and 4 to take his train going west. No one knows what was done afterwards, except that he was struck by the express train going east, and was killed.

Now the policy provides—the clause in controversy: "The sum of one-twentieth of the amount named in the clause 'D' in the case of accidental death," this amount being for $3,000; or one-fifth of the amount named in clause 'A' per week for a period not exceeding five consecutive weeks, in event of non-fatal injuries causing total disability or loss of hands, feet, or eyes, shall be the maximum limit of the company's liability under the policy; should the accident, injury, disability, death, or loss of limb, or sight result wholly or partly, directly or indirectly, from voluntary over-exertion; from lifting; from unnecessary or negligent exposure to obvious danger; from intoxication or while intoxicated; from or while violating law; from altercation, feud or quarrel;" and so forth. It is not necessary to read further *"from unnecessary or negligent exposure to obvious danger."*

Now, it is claimed by counsel for the insurance company that this was an unnecessary or negligent exposure to obvious danger; that Gulick could see the train approaching; that he must have known it was approaching, and hence if he undertook to go across the track in front of the train, it came under the provision of this clause of the policy, and the beneficiary can not recover except as to the one-twentieth part. Now, what does it mean? It is said that there is no clause in any form of the policy, reported in the reports, that is precisely like this one. It does not certainly mean the same as what would be commonly understood as contributory negligence; it could not mean that. There would be no use in taking out a policy in an accident insurance company if it meant simply that the party was to use the ordinary care which would be required in boarding a railroad train; it must mean more than that;

indeed, this clause says more than that: "From unnecessary or negligent exposure to obvious danger." It must be something, as I take it, more than miscalculation as to the distance the train was off, which might have been this case.

Now, in a case against the railway company—if this was an action against the railway company for negligence—the party would be required to ascertain and know how much time would be required to get over that track. But that is not this case. It must be a danger, as we take it, which he actually realizes and knows to be existing; that he goes voluntarily, and, if you please, willfully in front of it. If that was not so, as I have said, there would be no sense in an accident policy.

Now, this in the 56 Ohio State (*U. S. Mutual Accident Assn.* v. *Hubbell*), throws some light upon it:

"The term 'voluntary exposure to unnecessary danger' in an accident policy does not embrace every exposure of the assured that might have been avoided by the exercise of due care on his part. It relates to dangers of a substantial character of which the assured at the time had knowledge, and to which he purposely and consciously exposed himself, intending at the time to assume all the risk."

There is a difference between that clause and the one that is on trial. There it reads, "voluntary exposure to unnecessary danger." Here it reads "from unnecessary and negligent exposure to obvious danger." But not very much difference when you put the two clauses together; the same principle would apply, that is, he must intentionally expose himself to danger to be apprehended.

Judge Spear, who, I think it was, decided the above case, says:

"It is clearly not enough in such case to show that the deceased was negligent. Negligence in its usual legal signification has no place in measuring the liability of a company under an ordinary accident insurance policy; for its presence would overturn the primal theory of the contract. Accidents are the result very largely of the failure to observe due care, and yet the contract is intended as a remuneration in case of accident, and it is to procure the obligation of the company to pay this remuneration, that the assured pays the premium * * * Accidents are the result very largely of the failure to observe due care, and yet the contract is intended as a remuneration, in case of accident, and it is to procure the obliga-

tion of the company to pay this remuneration, that the assured pays the premium."

Referring to the case in the Massachusetts reports, copied from that case, the court says:

"By taking a policy of insurance against accidents, one naturally understands that he is to be indemnified against accidents resulting in whole or part from his own inadvertence."

And in a case that is referred to by counsel, the court says:

"Looking then at the policy with reference to the subject of the contract of insurance, the first proposition relied on in defense is against, 'A voluntary exposure to unnecessary danger, hazard, or perilous adventure.' A voluntary exposure to necessary danger is not forbidden, nor an involuntary exposure to unnecessary danger. The policy recognizes that there are some dangers which it is necessary to encounter, as for example, where there is a chance to rescue persons in deadly peril. There are other dangers which one usually need not encounter, if he knows of their existence long enough beforehand, as for example, the danger of a runaway horse, or coming car; and a merely inadvertent and unintentional exposure to a danger of this kind is not voluntary, but involuntary. A voluntary exposure to unnecessary danger implies a conscious, intentional exposure; something which one is consciously willing to take risk of. By taking a policy of insurance against accidents, one naturally understands that he is to be indemnified against accidents, resulting wholly or partly from his own inadvertence. Great negligence will not necessarily defeat a fire policy. And in the present policy against accidents, upon the evidence, although the jury might well find a voluntary exposure to danger, we can not say that it would be bound, as matter of law, to do so."

The case in the 127 Michigan, also submitted by counsel, comes nearer to this case:

"A condition in an accident policy of insurance against liability caused by 'voluntary or unnecessary exposure to obvious danger' is limited to cases of intentional exposure to recognized danger, and does not include acts of mere thoughtlessness on the part of the insured" (*Irwin* v. *Accident and Sick Benefit Assn.*, 127 Mich., 630).

Now, as I have said, if Mr. Gulick miscalculated the distance of the train, which he ought to have calculated, possibly, more accurately, and under that supposition he intentionally went across the

track, and did not use such care as would be required in a case for personal injuries through the negligence of the company, yet without he knowingly and intentionally exposed himself to the danger, the company would be liable. The question was submitted to the court, who tried the case in place of a jury, and the court found that the deceased did not violate the provision of the policy, which provided "That one-twentieth could be recovered when death ensued 'from unnecessary or negligent exposure to obvious danger.' "

If the question had been fairly presented to a jury under proper instructions, whether because of the negligence of Gulick that this provision of the policy had been violated, and the jury had found against the company, we would not disturb the verdict without we felt or thought it was clearly otherwise, or at least that the jury had no right to assume otherwise. If honest persons, fair minded persons, would differ as to the circumstances of this accident, then the verdict of the jury should stand, and so also the finding of the court.

Furthermore, it was the duty of the insurance company to show by a preponderance of the evidence that the death came within the exception; as said by our Supreme Court, the burden devolved upon the company to show by a preponderance of the evidence that he exposed himself to a known danger—unnecessarily and voluntarily exposed himself. Who says Gulick did so? Did he trip and fall on the platform before the train came along? Did he attempt to go over at all? Did he cross the track? Or did he trip and fall off the platform on the track? Did he stumble? Had he a fit? Was he stricken down? Of course we can assume that he went over the platform; we might also assume that he went over the platform directly in front of the locomotive; but we have no right to assume that he would necessarily and negligently expose himself to a known danger or to an obvious danger, and the facts being for the court, we think the court might well find that there was no evidence tending to show that he did so expose himself. It was the duty of the company to make out the exception as set forth in its policy; it failed to do so; therefore upon that theory particularly the judgment of the court below must be affirmed.

*Arrel, McVey & Taylor,* for plaintiff.

*Thos. W. Sanderson,* for defendant.