Columbian Mut. Life Assur. Soc. *v.* Cumberland *et al.*\*

(Division B.   Dec. 12, 1927.)

[114 So. 810.   No. 26706.]

1. Insurance.   *Policy provision against liability for death from quar-
rel held not to prevent recovery for death of assured who said
or did nothing evidencing hostility; that death is caused by as-
sured's act, remote in time from killing, held not to prohibit re-
covery under clause exempting from liability for death caused
by quarrel.*

   Where a covenant of insurance in a fraternal society provides that
   there is no liability for death or accident resulting from an
   altercation or quarrel engaged in by the assured at the time of
   his accident or death, such provision does not apply so as to de-
   feat liability if the insured was killed by a third party at a time
   and place when he was not saying or doing anything to evidence
   hostility, quarrel, or altercation. The fact that the death may
   have been caused by some act of the assured, remote in time
   from the killing, does not bring same within such clause so as to
   defeat liability.

2. Abatement and Revival.   *Appeal and error.   Pleas in abatement
   are overruled by pleas in bar; plea in abatement, filed during
   pendency of plea in bar by litigant proceeding to trial on merits,*

*will be ignored on appeal from judgment on issues presented by plea in bar.*

Pleas in abatement are overruled by pleas in bar; and, where a litigant files pleas in bar, and while such pleas are pending files a plea in abatement without withdrawing the plea in bar and proceeds to trial on the merits, the plea in abatement will be ignored in considering the appeal from a judgment on the issues presented by the plea in bar.

---

*Corpus Juris-Cyc. References: Abatement and Revival, 1CJ, p. 259, n. 77; p. 272, n. 6; Contracts, 13CJ, p. 541, n. 27; Mutual Benefit Insurance, 29 Cyc, p. 67, n. 21; p. 139, n. 93.

APPEAL from circuit court of Neshoba county.

HON. G. E. WILSON, Judge.

Action by Myrtle Cumberland and others against the Columbian Mutual Life Assurance Society. From a judgment for plaintiffs, defendant appeals. Affirmed.

*Wells, Stevens & Jones,* for appellant.

*Reily & Parker,* for appellees.

Argued orally by *J. Morgan Stevens,* for appellant.

ETHRIDGE, J., delivered the opinion of the court.

The appellant, the Columbian Mutual Life Assurance Society, issued a covenant for an insurance policy on the life of Harve C. Cumberland, on the 23d day of January, 1922. On the 24th day of October, 1925, while the said covenance or policy was in force, Harve C. Cumberland was shot and killed by one Irvin Powell, who was subsequently tried and convicted of the murder of Cumberland.

As a part of the contract sued on, there was attached to, as part of the provision of the said covenant, a provision for double and triple indemnity on account of accidental death. The provision for double indemnity, for which suit was filed, is as follows:

"*Double Indemnity Accidental Death.*—If the death of the assured shall result directly and independently of all other causes from bodily injuries and solely from external, violent, and accidental cause within ninety (90) days from date of such accident, the society will, in lieu of all other benefits, immediately pay to the designated beneficiary, upon receipt of due proof of the death of the assured in such manner, the sum of two thousand dollars."

The appellant defendant herein, was a fraternal society, with local households in the nature of local lodges, and its constitution and by-laws in force and effect at the time of the death of Cumberland constituted under the law a part of the contract between the member and the society binding upon the beneficiary.

The defendant pleaded the general issue, and also special pleas. The first plea set up the violation of sections 378 and 379 of the constitutional by-laws of the society. Section 378 reads as follows:

"Sec. 378. *Condition of Benefits.* All benefits stipulated in the society's covenants, or provided by the constitution and laws, shall be void if the death or disability of such member results from willful, immoral, or illegal acts, or intemperance on the part of the member. The right to receive special benefits under the conditions of the covenant or the constitution and laws of the society does not relieve the member from his obligation to pay all installments and dues required by the constitution and laws or the covenant held by him."

Section 379 reads as follows:

"Sec. 379. *Benefits Forfeited—When.* No payment of any benefit whatsoever shall be made to a member . . . nor shall any payments or benefits be made for any death, injury, or disability resulting either directly or indirectly, wholly or in part, from any of the following acts, causes, or conditions, or while so engaged or affected: Rioting; dueling; football playing; wrestling; boxing, scuffling; riding or driving, in races of any kind; injury resulting from altercation or quarrel; voluntary

or unnecessary exposure to danger; or while handling any explosive compound.''

It was alleged that Harve Cumberland violated this provision, in that he was engaged in an altercation or quarrel which brought about his death; that the said altercation or quarrel and killing was the result of his previous immoral and illegal assault upon the wife of Irvin Powell, which led to the shooting which caused his death.

The defendant also filed a special plea in abatement after the filing of the above pleas, alleging a failure to comply with section 384 of the constitution of the society, which provides that no suit shall be commenced or prosecuted until the beneficiaries under any claim have exhausted the remedies especially provided by the constitution and by-laws of the society, detailing the method of procedure in such case.

The appellees, plaintiffs herein, filed replication to each of the three special pleas, setting up with reference to the last plea in abatement that defendant had denied liability and contested same in a suit, and had proceeded to defend without raising any question of compliance with the said section until after the filing of the special pleas.

It appears from the evidence in the case that in July, prior to the killing on the 24th day of October, Harve Cumberland, the deceased and assured, went to the home of one Irvin Powell while he was absent and insulted his wife, making some kind of assault upon her; that she went to a neighbor's house for protection; that after this misconduct Cumberland returned to the woods, where he was getting logs to log a sawmill, and told Wayne Meeks, who was working with him, what had occurred, expressing the belief that Mrs. Powell would tell on him; and that he then and there uttered threats against Powell if he undertook to resent his conduct. It was testified for the defendant that subsequently and only a short time before the killing another conversation took place between Cumberland and Meeks, with reference to

this matter, and that threats were again made by Cumberland should Powell undertake to do anything about the matter.

It appears proof was offered on the part of the plaintiff that, on October 24, 1925, Irvin Powell walked up to where Cumberland was standing, and, without any cause or overt act, and without any words having been spoken by Cumberland, shot him to death. The evidence for the plaintiff shows that Cumberland was standing on the street in Philadelphia, near a store where a sale was going on, with his small daughter on one side of him, and a niece on the other, each holding one of his hands, engaged in a conversation, when Powell shot him without warning, and while shooting him said, "I reckon you know me now." Several witnesses testified to the transaction at the time of the killing.

For the defendant, Powell and his wife testified that they had heard of such threats; that Powell came in contact with Cumberland inadvertently, and that Cumberland gave him a knowing look and made a movement toward the bosom of his shirt as if to draw out a weapon, and that thereupon he fired upon Cumberland, thinking that he intended to carry out his threat; that Powell continued firing until he had fired four shots; that the smoke from the first shots prevented him from seeing what Cumberland was doing when the last two shots were fired. The wounds on the body of Cumberland showed that two shots were fired in front, and the others from the side or rear. The testimony was submitted to the jury, who found for the plaintiff.

The main question for consideration is whether Cumberland was engaged in an altercation or quarrel at the time of the killing and whether his previous conduct was so connected with the transaction as to make it a part of same, and when so considered, whether it would constitute engaging in a quarrel or altercation and whether Cumberland had caused the killing through his misconduct.

We think the proof for the plaintiff is sufficient to warrant the jury in finding that Cumberland made no demonstration, and said nothing at the time of the killing, and that it could not be said he was engaged in a quarrel or altercation at that time, within the meaning of the terms of the covenant. We also think the threats and misconduct on the part of Cumberland in July, previous to the killing in October, were too remote in point of time for it to be said they were part of the transaction in which Cumberland lost his life. There must, we think, be some direct relation between the act of Cumberland prior to the killing, and the act at the time of the killing, in order to constitute it a part of the transaction, and that the proof here does not make a case where it can be so considered. Ample time had passed between the time of his misconduct and the time of the killing for Powell's passion to have cooled, and he could have resorted to the proper legal remedy should he so have desired; and, by reason of his nonaction during all of this time, it could be inferred that he would not resort to violence in avenging his injuries. It certainly is too great a length of time between the killing and the alleged cause thereof for it to constitute the same transaction. A man is not engaged in an altercation or quarrel when he is not doing or saying anything at the time of his death; and his misconduct inciting such crime having been so remote as not to constitute a part of the same transaction, although some antecedent act may have moved the party to kill him, is not within the terms of the policy. It is certainly not within the contemplation of the policy to embrace remote transactions, and it is unnecessary to now decide whether the misconduct would have brought it within the terms of the policy had such misconduct occurred some recent day prior to the meeting and the killing. It is a well-settled principle of law that forfeitures are not to be brought about by a strained construction of the language of contracts, and that the terms of a con-

tract of insurance are construed more strongly against the insurer than the insured.

With reference to a violation of section 384, it is a plea in abatement, not going to the merits, and, the defendant having filed three pleas in bar to the action prior to filing the plea in abatement and proceeding throughout the trial to contest liability, will not be permitted to stand on the plea in abatement. Pleas in abatement are overruled by pleas in bar. It is not permissible to plead them together.

The other assignments of error are not well taken, and the judgment of the court below will be affirmed.

*Affirmed.*