## Jordan v. The State Mutual Benefit Society

*Robert G. Bushong* and *Samuel R. Liever*, for plaintiff.

*Wellington M. Bertolet* and *Frederick J. Bertolet*, for defendant.

HESS, J., March 14, 1946.—At the trial of this case the court directed a verdict in favor of defendant, and the jury returned a verdict as directed. Thereafter, plaintiff obtained a rule to show cause why a new trial should not be granted. The rule has been argued.

Plaintiff is the beneficiary under a policy of life insurance issued by defendant upon the life of Oliver White. The insured died on September 12, 1943, from gun shot wounds inflicted by Clarence J. Robertson. The shooting took place at a so-called club in the 100 block on Penn Street in the City of Reading. Robertson pleaded guilty to murder in the Court of Oyer and Terminer of Berks County, was adjudged to be guilty of murder in the first degree and sentenced to life imprisonment.

The question here involved arises out of a provision of the policy limiting liability on the part of the insurer when death results "as a consequence of the perform-

ance of or taking part in any altercation resulting in physical violence, or any criminal act".

In proving her case, plaintiff read into evidence the admitted allegations of the statement of claim relative to the issuance of the policy to decedent with plaintiff named as beneficiary, the death of the insured, proof of death and demand for payment, and refusal of payment. A photostatic copy of the policy involved was admitted into evidence and, thereafter, plaintiff rested her case.

Defendant introduced witnesses to prove its affirmative defense under the limitation of liability clause previously quoted. These witnesses, in effect, testified that the insured, Oliver White, with Clarence Robertson and others, was playing poker at a club. The game began about midnight and continued until 5 or 5:30 o'clock on the morning of Sunday, September 12, 1943. During the game, White apparently loaned $1 to Robertson. Thereafter, White asked for the return of the money, Robertson refused, and from time to time the argument about the money arose again.

Later, Robertson put some money on the table and White "snatched" $1, claiming it was the money Robertson owed to him. Throughout the course of the game the participants had been doing some drinking, apparently beer. Robertson left the game and was gone for from five to ten minutes. He went to the back of the club, procured a bottle of beer, drank part of the contents, secured his rifle which had been in the custody of the bartender, and returned to the poker table. Robertson then made some statement to White about the money and commenced the shooting, firing several shots into the body of White. These bullet wounds caused White's death. Decedent said nothing to Robertson and did nothing that might have provoked or continued a quarrel between the time that Robertson left the game and the time of the shooting five or ten minutes later.

The court having directed a verdict in favor of defendant, the testimony must be viewed in a light most favorable to plaintiff. We must assume that had the case gone to the jury, all inferences from the testimony favorable to plaintiff's case would have been adopted by the jury: Kimble v. Wilson et al., 352 Pa. 275. The Supreme Court in the case cited considered a nonsuit but the legal effect is the same. Said the court at p. 277:

"If there is any doubt of the inferences that may be drawn from the oral evidence, it must be submitted to the jury. In passing on a motion to nonsuit and in reviewing the refusal to take off a nonsuit, the oral evidence must be regarded in the light most favorable to the plaintiff, who must receive the benefit of every fact the jury might reasonably infer in plaintiff's favor from the evidence received or erroneously excluded. . . ."

This case presents a novel and extremely interesting question. At the trial, the trial judge was of the opinion that the jury could come to only one conclusion—that insured's death resulted from or was caused by his taking part in an altercation with Robertson. Accordingly, a verdict was directed for defendant. A comprehensive study of the problem and an analysis of decisions from this and other jurisdictions leads us to change our conclusion.

The jury had a right to infer that when Robertson left the poker game the altercation, if any had taken place, had in fact ended. The jurors might also find that the beer or liquor which Robertson consumed during the game and after he left the table had caused him to become intoxicated and that he was moved or induced to shoot the insured by reason of intoxication and not because of any altercation. A further inference might be that White was pursuing the collection of a debt owed to him by Robertson and took no part in the altercation which was brought about entirely by the words and actions of Robertson.

Couch On Insurance, sec. 1241, p. 4534, states:

"A provision exempting the insurer from liability for injuries caused by fighting, etc., contemplates some degree of blame on insured's part, some element of voluntary participation, some improper conduct or aggression, and does not cover insured's act in merely resisting assault, where the altercation was unavoidable, so far as the insured was concerned, and one over which he had no control, and was not occasioned by any improper act or conduct on his part. . . . Again, a clause in a life policy, providing that, 'if death occurs from assault provoked by quarreling, no recovery can he had,' must have a reasonable construction, and the death of the insured cannot be regarded as coming within its meaning unless it occurred as the result of a quarrel provoked by himself, and of so serious a nature that he might reasonably have expected that anger would be thereby aroused, and injury inflicted, it not being every frivolous controversy that is a quarrel within the meaning of such a clause."

In a somewhat similar case, the Supreme Court of Mississippi in Columbian Mutual Life Assurance Society v. Cumberland et al., 148 Miss. 690, 114 So. 810, said at p. 694:

"The main question for consideration is whether Cumberland was engaged in an altercation or quarrel at the time of the killing and whether his previous conduct was so connected with the transaction as to make it a part of same, and when so considered, whether it would constitute engaging in a quarrel or altercation and whether Cumberland had caused the killing through his misconduct."

In the case cited, Cumberland was shot and killed by one Powell who was subsequently tried and convicted of the murder of Cumberland. It is true that in the Cumberland case apparently several months had passed between the altercation and the shooting, and the court was of the opinion that ample time had passed between the quarrel and the shooting to cool passion. The prin-

ciple involved, however, is the same and the jury should have an opportunity to decide whether or not ample time had passed in the instant case to bring about a cooling of passion that may have been engendered by any previous altercation, if any.

The Mississippi court also stated (p. 695):

"A man is not engaged in an altercation or quarrel when he is not doing or saying anything at the time of his death; and his misconduct inciting such crime having been so remote as not to constitute a part of the same transaction, although some antecedent act may have moved the party to kill him, is not within the terms of the policy."

Our own Supreme Court in O'Neill v. Metropolitan Life Insurance Co., 345 Pa. 232, speaking through the present Chief Justice, said at p. 243:

" 'To avoid liability it must be established that the violation of law was the cause of, or had some causative connection with the accident.' "

The facts of that case and the policy upon which suit was brought were not similar to those in the instant case but the Chief Justice cites with approval a section of Couch On Insurance, which section is part of Chapter XVII on "Particular Risks and Losses Excepted", from which chapter the previous quotation by the same authority was taken by us. In the O'Neill case, the Supreme Court goes on to say:

"In the instant case 'the causative connection' of the insured's unlawful conduct 'with the accident' was a legitimate inference for the jury to draw."

Applying similar reasoning, we come to the conclusion that in this case the causative connection of the altercation, if any, between White and Robertson, with the subsequent shooting which brought about the death of White, was a matter of fact or inference for the jury to decide. A new trial is in order.

And now, to wit, March 14, 1946, the rule for a new trial is made absolute.