## *UNION CASUALTY, ETC., CO. v. HARROLL.

### (*Jackson.*    April 17,   1897.)

1. LIFE INSURANCE.   *Death results from accidental means, when.*

    The death of the insured results from injuries sustained by
    "accidental means," within the meaning of a life and accident
    policy, though he was shot and killed while advancing in an
    angry and threatening manner upon his slayer, if he did not
    know at the time, and had not reason to believe, the latter
    was armed with, and would use, a deadly weapon.   (*Post, pp.*
    *594, 595.*)

    Cases cited and approved: Insurance Co. *v.* Bennett, 90 Tenn.,
    256; 36 Miss., 531; 126 Mo., 104 (S. C., 30 L. R. A., 209).

2. SAME.   *Death not result of voluntary exposure to unnecessary dan-*
    *ger, when.*

    The death of the insured does not result from "voluntary expos
    ure to unnecessary danger" within the exception of a life and
    accident policy, although he was shot while advancing toward
    his slayer, with angry and threatening demonstrations, after
    the latter had warned him not to approach, unless he knew,
    or had sufficient reason to believe, that his adversary was
    armed, and, on his continued advance, would shoot to kill.
    (*Post, pp. 595–598.*)

    Cases cited and approved: Miller *v.* Ins. Co., 92 Tenn., 167; 102
    Pa. St., 263; 58 Mo., 13; 34 Wis., 389; 126 Mo., 104.

    Cited and distinguished: 80 Ga., 541; 133 N. Y., 366; 134 Mass.,
    175.

---

### FROM SHELBY.

---

Appeal in error from Circuit Court of Shelby
County.   L. H. ESTES, J.

* On the question what constitutes an accident within the meaning of an insur-
ance policy, the authorities are collected in a note to *Fidelity & C. Co.* v. *Johnson*
(Minn.), 30 L. R. A., 206.—REPORTER.

Union Casualty, Etc., Co. v. Harroll.

TURLEY & WRIGHT and BUCHANAN & MINOR for Union Casualty, Etc., Co.

PERKINS & WATSON for Harroll.

BEARD, J.   This is an action on a policy which insured defendant in error against loss of life of her husband, resulting from "bodily injuries sustained through external, violent, and accidental means," within the meaning of the policy and its conditions. Among the conditions is that "this insurance does not cover . . . voluntary exposure to unnecessary danger."

The husband of defendant in error was killed by a pistol shot fired by one McNeal, and the main defense set up was that the death of Harroll occurred within the terms of this condition. The evidence in the case discloses that the deceased and McNeal were employees of a railroad leading into Memphis; that there had been more or less of bad feeling between them, breaking out into occasional quarrels, in which profane and insulting language was used by Harroll towards McNeal; that the morning of the homicide, and a very short time before it occurred, the parties met and agreed that they would stop quarreling, but that soon after this agreement was made the deceased gave an order to McNeal to perform some service about the train, then being made up, which the latter thought was beyond the scope of his duty, and therefore declined to obey, and thereupon the quarrel was offensively

renewed by Harroll. To this point the case rests exclusively on the testimony of McNeal, the survivor of the tragedy, and a witness for plaintiff in error, and at this point the divergence in the evidence begins. This witness says immediately upon his refusal to obey the order, Harroll, applying a vulgar and abusive epithet to the witness, advanced threateningly upon him four or five steps, when witness, having retreated a corresponding distance, believing himself to be then in danger of death or great bodily harm, suddenly drew a pistol, which, up to that moment, was concealed, and fired the fatal shot. He also states that at the moment of time Harroll renewed the quarrel and began his menacing advance, he (the deceased) was standing on or near the steps of the rear end or platform of the last car in the train, and when shot he was about five steps from that position, and still moving towards the witness.

Upon this evidence it was insisted by the insurance company, the death of Harroll was the result of voluntary exposure to unnecessary danger on his part. On the other hand, and in rebuttal of this statement of McNeal's, the defendant in error introduced testimony strongly tending to show that the deceased, at the time of the shot, was in the act of ascending the steps of the car, with his left hand on the iron rod or railing, and his right arm hanging by his side, and that when he received the shot he lifted his right hand to his breast, where the

14 P—38

pistol ball entered, and, gradually relaxing his hold on the iron rod or railing, sank to the ground dead. This testimony also disclosed that the assured was unarmed at the time of the difficulty.    Upon this state of the record, it was insisted for defendant in error that when killed Harroll was making no aggressive demonstration towards his slayer, but, on the contrary, was on the point of entering a coach for the purpose of discharging his duties as porter of the train;    and, this being so, the condition in question could not be invoked to defeat a recovery on this policy.    Upon these two contentions of fact, the case was submitted to a jury, who returned a verdict in favor of the defendant in error.    With this finding we cannot interfere, unless some error was committed by the Court.

The first assignment of error is upon that part of the charge of the trial Judge in which he said to the jury, though they '' believed from the evidence that the deceased was advancing on McNeal in a threatening manner at the time the latter shot him, yet this injury would be accidental as to Harroll, if he did not know at the time, or had not reason to believe, McNeal was armed with a deadly weapon.''    It is to be observed, in this paragraph of his charge, that the trial Judge was not dealing with the condition of the policy which has been before set out, as the one on which the defense is rested, but was instructing them on the subject of an accidental killing, and he properly said to them

that upon the hypothesis presented in this paragraph, the death of Harroll would be accidental as to him. The death was none the less an accident so far as he was concerned, under the authorities, though he was moving aggressively upon his slayer when shot, if the deceased did not know and had no reason to believe that McNeal was armed, and intended, upon his advance, to slay.

He was unarmed, and, though he advanced with offensive words and a manner constituting a challenge to fight, yet ignorant of the fact that there was a deadly weapon on the person of his adversary, and receiving no warning from him that he would shoot if the advance continued, Harroll had the right to presume, if the fight occurred, it would be carried on without the use of such a weapon. *Price* v. *State*, 36 Miss., 531. And the death under such conditions would be accidental as to the assured, though the act producing it was intentional on the part of McNeal. *Insurance Co.* v. *Bennett*, 90 Tenn., 256; *Lovelace* v. *Fidelity Insurance Co.*, 126 Mo., 104 (S. C., 30 L. R. A., 209).

It is next assigned for error that the trial Judge declined to give the special request: "If you find that the insured, Harroll, approached McNeal, cursing him, and applying to him a vulgar epithet, and that McNeal retreated, but Harroll continued to advance, with threatening demonstrations, although McNeal warned him not to approach, and that then McNeal shot the insured, then the Court charges

you that, under such circumstances, the death of said insured was not covered by the policy, and your verdict will be for the defendant.''

It will be seen this request omits from the hypothesis presented, the elements of knowledge or reasonable apprehension on the part of Harroll of the fact that his adversary was armed, and, on his continued approach, would shoot to kill. If granted, the trial Judge, in effect, would have told the jury, upon the case stated, that the death of the assured was the result of a voluntary exposure to unnecessary danger, although he neither knew, nor could reasonably have apprehended, that McNeal had a pistol which he would use upon him. The trial Judge was right in declining this request. A voluntary act is an intentional one—one which the actor of his own will, with the power of choice, determines to do or perform. So this condition is to be read as the equivalent of one exempting the insurer from liability where death results from an intentional exposure of one's self to unnecessary danger. Both terms imply some degree of knowledge or apprehension of the danger incurred and a purpose to take the risk. If the danger be concealed and unknown to the party who ultimately suffers from it, then it cannot be said he has voluntarily exposed himself to it. To constitute such exposure, one "must intentionally have done some act which reasonable or ordinary prudence would pronounce dangerous" (*Burkhead* v. *Travelers' Insurance Company*, 102 Pa. St.,

263; S. C., 48 Am. Rep., 205), or, as expressed by this Court in *Miller* v. *Insurance Company*, 92 Tenn., 167, "some degree of consciousness of the danger is necessary before there would be that voluntary exposure to unnecessary danger required to prevent indemnity."

In every case which we have examined where this condition has operated to defeat a claim under the policy, the assured had voluntarily or intentionally done some act which reasonable prudence would have pronounced dangerous and in which death had followed as a consequence. As an illustration of this class of cases, we refer to *Travelers' Insurance Company* v. *Jones*, 80 Ga., 541 (S. C., 12 Am. St. Rep., 270), where a party going home at night knowingly left other and safe paths of travel and betook himself to a dangerous railway trestle; to *Williams* v. *U. S. M. Assn.*, 133 N. Y., 366, where the assured sat down on a railway track when an engine moving towards him, was only twenty-five feet away, and to *Tuttle* v. *Travelers' Insurance Company*, 134 Mass., 175 (S. C., 45 Am. Rep., 316), where the assured was killed by a train while running in front of it to take a train approaching him and moving on a parallel track. In all these cases the danger was so obvious that it should have been avoided by a man of ordinary prudence, and the exposure to it was voluntary and unnecessary. Under such circumstances the Courts have properly held that a death thus resulting falls

within this clause of exemption. On the contrary, that this condition is only operative where there is some degree of consciousness of the danger which results in the accidental death of the insured, is clearly announced, not only in *Miller* v. *Insurance Co.*, *supra*, but in *Schneider* v. *Travelers' Insurance Co.*, 58 Wis., 13 (S. C., 46 Am. Rep., 618); *Pierce* v. *Travelers' Insurance Co.*, 34 Wis., 389; *Lovelace* v. *Travelers' Protective Association*, 126 Mo., 104 (S. C., L. R. A., 209); *Jones* v. *U. S. Mutual Accident*, 61 S. W. Rep., 485. See, also, text and note 1 (2d Ed.) Am. & Eng. Enc. L., 307. Both on principle and authority we are entirely satisfied with the action of the trial Judge in declining this request.

There are other assignments of error upon the Court's refusal to give other special requests, but we find that such of them as correctly announce the law applicable to the case were embraced in the general charge, while others not so included were not pertinent or were unsound. These assignments are therefore overruled.

The judgment is affirmed.