JOHNSON *v.* LONDON GUARANTEE & ACCIDENT CO.

1. Accident Insurance—Defenses—Objections on Appeal.

An insurance company which has defended an action upon an accident policy on the theory that there was a question for the jury as to whether the conduct of the insured had been such as to avoid the policy cannot, after an adverse judgment, complain that the court did not, on its own motion, decide the question, and direct the verdict in its favor.

2. Same—Voluntary Exposure—What Constitutes.

The term "voluntary exposure to unnecessary danger," as used in an accident insurance policy exempting the insurer from liability for injuries caused by such exposure, means a conscious or intentional exposure, involving gross or wanton negligence on the part of the insured.[1]

3. Same—Classification of Risks—Farming.

One having regular clerical employment in a city, but whose home is upon a farm, where he spends his Sundays and one night in each week, the management of which is, in his absence, entirely in the hands of men hired by him for the purpose, is not a "farmer," within the terms of an accident insurance policy classing farming as a hazardous employment.

4. Same—Change of Occupation—Question for Jury.

Nor can it be said, as a matter of law, that the person so employed changes his occupation to farming by returning to his farm before the expiration of his contract with his city employers, on account of their disposing of their business, so as to limit his recovery upon the policy, for injuries received a week later from being tossed by a bull, to the amount of indemnity which the premium paid by him would have purchased at the rates fixed for the increased hazard, in accordance with a provision of the policy that such should be the effect of the insured's "engaging" in a more hazardous occupation than that under which he was insured.

Error to Wayne; Carpenter, J.   Submitted October 14, 1897.   Decided November 23, 1897.

---

[1] With this case, as reported in 40 L. R. A. 440, is an extensive note on the subject of voluntary exposure within the meaning of an accident policy.

*Assumpsit* by Benjamin Johnson against the London Guarantee & Accident Company on a policy of insurance. From a judgment for plaintiff, defendant brings error. Affirmed.

Plaintiff took out an accident policy in the defendant company in the year 1892, for the sum of $3,000, with a weekly indemnity of $15, "against bodily injuries sustained through external, violent, and accidental means." A written application was made, which was a part of the policy. The premium was $4 per $1,000. In his application he represented that he was "engaged in the business or occupation of secretary and treasurer of Hull Bros. Company, grocers," under the classification "select;" and the policy contained the same language. The policy was twice renewed. At the time of the application, and until the time of the accident, he resided on his farm in Monroe, Mich. As a part of the policy, he agreed:

"That, if injured while engaged in work or duty classed as more hazardous than my occupation above stated, I shall be entitled to recover only such amount as the premium paid by me would purchase at the rates fixed for such increased hazard."

A part of the business of his farm was raising cattle. He kept a bull. The bull had broken into his calf pasture. On October 29, 1895, while returning from his greenhouse to his dwelling, about 11 o'clock, he saw the bull in this pasture, and went in to drive him out. The cause of the injury is thus stated in his notice to the company:

" *Q.* Where and how did the accident occur?

" *A.* The bull had broken through a fence, into a pasture kept on purpose for calves. He undertook to drive him out, when the bull turned suddenly, and tossed him.

" *Q.* What were you doing at the time?

" *A.* Walking around, looking about.

" *Q.* State just what happened.

" *A.* Seeing the bull in the calves' pasture, he undertook to drive him out, when the bull suddenly turned around, and tossed him."

Some time before the accident, Hull Bros. 'had sold out their entire stock and business, and plaintiff had no employment from them except to assist in collecting accounts. At the time he was superintending the building of a greenhouse, and had been home for about a week. He testified that—

"Two men were managing my farm at the time of the accident. It was their business to take care of the stock. Between them they had the entire charge of it. That included the bull. I left everything in charge of the two men. When I was there, I took charge of it as I saw fit."

A letter written in his name by his sister-in-law, under date of November 5, 1895, contained the following statement:

"I left Detroit about the middle of September. Some weeks before that, I bought a plant of five greenhouses from Mr. C. Hogg, of Van Dyke avenue, Detroit, and came home to add the florist's business to what I already had on the island, and took the management of the farm, fruits, and greenhouses; having two men working the farm and vegetable garden. I have already told you, when I filled out your form, just how I came to meet with the accident, and cannot understand what more 'you want to know."

Under date of November 2d, she wrote to defendant the following letter:

"I have submitted your letter to Mr. Ben Johnson. He came home after Hull Bros. sold out to Mr. J. L. Hudson, about the middle of September; but, before that time, he bought a greenhouse plant in Detroit, and was working to get it in place, and was still working at it at the time of the accident. Mr. Ben Johnson owns Johnson's Island, in the city of Monroe, upon which place he has cattle, 'and has been raising small fruits for the last five years. He does not wish to hold back any information in regard to the accident. If there should be anything more you wish to know, let me hear from you."

Plaintiff introduced testimony showing that the bull had never before shown signs of viciousness, although he testified: "I have heard of the boys going along the river,

and teasing the bull, and I presume sometimes the bull had cause to be ugly."

In his claim for indemnity, the following question and answer were given:

. "*Q.* What was your weekly salary or income at the time you were injured?
"*A.* None; the business in liquidation."

He had a contract for employment with Hull Bros., which did not expire until some time after the injury. He testified: "I received a salary up to a week before the accident. I was not receiving any salary at the time because there was no money. I was not receiving any money for my time."

Insurance is classified by defendant as "select, preferred, ordinary, medium, hazardous, and extrahazardous." Under this classification, farming was deemed hazardous, and the annual premium was $15 per $1,000. The plaintiff recovered $260, the full amount claimed.

*Charles S. McDonald* (*S. S. Babcock*, of counsel), for appellant.

*Sloman & Groesbeck* (*Emanuel T. Berger*, of counsel), for appellee.

Grant, J. (*after stating the facts*). 1. Counsel urge that the court erred in not directing a verdict for the defendant, on the ground that the plaintiff had voluntarily exposed himself to unnecessary danger. The complete answer to this is that counsel preferred no such request at the trial. The case was tried upon the theory that upon this point the question belonged to the jury to decide. This question is therefore not before us.

2. Error is alleged upon the following portion of the instructions:

"In order to make his act upon this occasion a voluntary exposure to unnecessary danger, he must have acted with gross or wanton negligence, or otherwise it was not a voluntary exposure to unnecessary danger."

In this connection the court also charged as follows:

"I charge you also that a voluntary exposure means a conscious or intentional exposure. If the insured in this case believed or had good reason to believe that he was endangering his safety by attempting to drive this bull from this inclosure, then I charge you that he cannot recover. If, on the other hand, he did not believe or had any reason to believe that there was any danger to himself in that attempt, then I charge you that it was not a voluntary exposure to unnecessary danger."

This charge is sustained by the authorities. *Manufacturers' Acc. Indemnity Co.* v. *Dorgan*, 58 Fed. 952, 7 C. C. A. 588. See, also, 2 Bac. Ben. Soc. § 492, where will be found a full citation of authorities.

3. Was plaintiff engaged in an occupation more hazardous than that in which he was classified in the policy? The defendant requested the court to instruct the jury that plaintiff was in fact engaged in the more hazardous employment; also, that if they found that he was engaged in another occupation in addition to that of secretary and treasurer, and did not disclose that fact to the defendant, he could recover only the lesser sum under the more hazardous risk. These requests were refused, and the jury instructed that if the plaintiff had ceased to belong to the occupation in which he was insured, and had, in fact, become a farmer, he could only recover for the more hazardous occupation.

The question is one of fact, to be determined by the court only when there is no dispute as to the evidence, and but one rational conclusion can be drawn therefrom. A man may be engaged in two or more occupations, in which case he can only recover for injury received in the employment for which he is insured. *Standard Life & Acc. Ins. Co.* v. *Taylor*, 12 Tex. Civ. App. 386. The provisions of the policy in that case were similar to those in this. Taylor was insured as a blacksmith, employed by a railroad company. In fact, he also acted as a switchman and car coupler, occupations more hazardous than blacksmithing. Held, that recovery for injuries received while act-

ing as a switchman or coupler must be limited to the increased hazard.  We think there was no evidence tending to show that plaintiff was a farmer, within the terms of the policy, until his employers, Hull Bros., had ceased to do business.  The fact that he lived upon his farm, and carried it on through others, does not make him a "farmer," within the meaning of that term as used in these accident policies.  He was at home only from Saturday night to Monday morning, and on Wednesday night, of each week.  There is no testimony to show that during that time he was engaged in the actual work of a farmer, so as to incur the more hazardous risks incident to that business.

It does not follow that plaintiff's policy lapsed when his regular employment with Hull Bros. ceased, or that he had necessarily become a farmer or engaged in the business of farming by spending his time at his home when the necessity for his being in Detroit had ceased.  *Stone's Adm'rs v. U. S. Casualty Co.*, 34 N. J. Law, 371.  In that case a school teacher, out of employment, had let contracts for the erection of two dwellings for his own use, and, while overlooking one, fell, and was killed.  Held, that he had not changed his employment, but was engaged in an individual act, which did not avoid the policy.  See, also, 2 Bac. Ben. Soc. § 491; *Hess v. Accident Ass'n*, 112 Mich. 196.  There was testimony tending to show that plaintiff had not changed his occupation.  The letters, upon which considerable reliance is placed, were not written by the plaintiff himself, or dictated by him, but were written by his sister-in-law while he was suffering from his injuries.  They are explained by him and by her in such a manner that they were properly left to the jury, in connection with the other testimony, to determine their exact meaning.  There was sufficient conflict in the evidence to justify the submission of the question to the jury.

The judgment is affirmed.

The other Justices concurred.