# MEISTER *v.* GENERAL ACCIDENT CORP.

(179 Pac. 913.)

**Insurance—Accident Insurance.**

1. If a man deliberately assaults another with a lethal weapon in his hand, such as a pistol, whether it be loaded or not, it cannot be said that the injuries he receives in the resulting struggle are accidentally received within terms of insurance policy.

[As to right to recover under accident insurance policy for injuries received while fighting, see note in **Ann. Cas.** 1916C, 579.]

From Multnomah: WILLIAM N. GATENS, Judge.

Department 1.

This is an action wherein the plaintiff seeks to recover upon an accident insurance policy, for the death of her husband, who was shot and killed by one Emil Spränger. The sole issue developed by the pleadings is as to whether the death was caused by accident. The complaint, upon this subject, follows the language of the contract of insurance, and reads thus:

"That the said Henry Meister, deceased, met with his death on March 4, 1917, and that said death was caused directly, solely and independently of all other causes, by external, violent and accidental means, and was not caused wholly or in part, directly or indirectly by any disease, defect or infirmity on the part of said

Henry Meister, deceased, nor was said death caused through suicide."

The answer denies this allegation and pleads affirmatively that at the time of the homicide, the plaintiff and her husband, and Spranger were all residents of the same apartment house; that on that day the deceased, in a fit of anger, went to the basement and procured a gun with which he proceeded to Spranger's apartment, where, with the pistol in his hand, he assaulted Spranger, who drew a gun and shot Meister, causing his death. It is then alleged that Meister's death was the natural and probable consequence of his assault upon Spranger, and was not the result of any accident.

This is denied in the reply. A trial being had, at the close of plaintiff's case, defendant moved for a judgment of nonsuit, which was granted, and plaintiff appeals. AFFIRMED.

For appellant there was a brief and an oral argument by *Mr. C. T. Haas.*

For respondent there was a brief over the name of *Messrs. Wilbur, Spencer & Beckett,* with an oral argument by *Mr. Ralph W. Wilbur.*

BENSON, J.—The contention of appellant is, that there is evidence in the record which would justify the submission of the case to the jury upon the issue as to whether or not the death was accidental. The evidence is brief, consisting of the testimony of the plaintiff herself, and the policy of insurance. The plaintiff testified simply that the deceased was her husband; that on March 4, 1917, Spranger shot him with a revolver; that he died from the wound so inflicted, and

that she is the beneficiary named in the contract of insurance; that on the afternoon of the day when the shooting occurred, she and her husband had been playing cards with Spranger in his apartment; that they later adjourned to Meister's apartment where they had dinner, or a lunch; that thereafter Meister said that he must attend some sort of a meeting, and went away; that Mrs. Meister and Spranger then returned to his apartment and resumed the card-playing; that at about 9:30 P. M. Meister returned, and knocked at Spranger's door, which was opened by Mrs. Meister, who found her husband in a mood so angry that he struck her, and then proceeded to the basement, where he procured a pistol and with it in his hand, went to Spranger's apartment, and assaulted the latter, who in the scuffle which ensued, shot and killed Meister. Spranger had not, prior to the affray, displayed any weapon, and the evidence does not disclose any knowledge upon the part of Meister, that Spranger was armed. This is practically all of the evidence. Does this evidence make a case sufficient to go to the jury upon the question as to whether or not the death was caused by accidental means? We have been unable to find any case in which this court has answered the query. The authorities in other jurisdictions are conflicting. In the case of *Fidelity & Casualty Co. of New York* v. *Stacey's Exrs.,* 143 Fed. 271 (74 C. C. A. 409, 6 Ann. Cas. 955), 5 L. R. A. (N. S.) 657), the policy insured the deceased "against disability or death resulting directly, and independently of all other causes, from bodily injuries sustained through external, violent and accidental means, (suicide, sane or insane, not included)." The insured engaged in a heated discussion with another man, who called him a liar, whereupon he struck the man two blows in the face, one with each fist, and in

so doing he received a cut or abrasion of the skin upon his knuckle. Blood-poisoning ensued, and in a few weeks he died from its effects. The United States Circuit Court of Appeals, speaking by Judge Pritchard, says:

"It thus appears that the insured, at a time when he was in full possession of his mental faculties, accosted Porter and engaged in a controversy in consequence of which he committed an assault on the body of Porter, evidently for the purpose of punishing him for what had just occurred between them. Everything connected with the transaction clearly indicates that the insured intended to do exactly what he did on that occasion. Therefore the injury which he received at the time was the natural and logical result of an intentional act on his part. He was a man of intelligence, and it must be presumed that he knew that in making an assault with his fist in the manner described he would probably sustain more or less injury to himself."

Consequently it was held that the trial court should have directed a verdict for the defendant.

*Hutton* v. *States Accident Ins. Co.,* 267 Ill. 267 (108 N. E. 296, Ann. Cas. 1911C, 577, L. R. A. 1915E, 127), was a case in which the plaintiff saw a man with whom he had had a dispute, sitting on a stool at a lunch counter. Without saying a word, he walked up behind the man and struck him a blow on the side of the head, intending, as he says, "to hit him so hard that he wouldn't get up and begin it all over." The other man, however, knocked the plaintiff down, and in some manner his leg was broken. The Supreme Court of Illinois held that the trial court should have directed a verdict for the defendant, for the reason that the injury was not the result of accident, citing *Fidelity & Casualty Co. of New York* v. *Stacey's Exrs.,* 143 Fed. 271 (74 C. C. A. 409, 6 Ann. Cas. 955, 5 L. R. A. (N. S.)

657), and *Taliaferro* v. *Travelers' Protective Assn.,* 80 Fed. 368 (25 C. C. A. 494), and saying:

"Where one voluntarily and deliberately engages in a fight or brawl, and places another in a position where he, too, must fight to defend himself, it is a natural result, and one known to all sensible men as likely to follow, that one or both of the combatants will receive more or less serious injury."

*Taliaferro* v. *Travelers' Protective Assn. of America,* 80 Fed. 368 (25 C. C. A. 494), is a leading case upon the subject, and was an action to recover upon an accident policy. The facts, as gleaned from the opinion, were as follows: Taliaferro, the insured, and one Frith were standing in front of the latter's gate, talking. The conversation grew loud and angry in its tone and Taliaferro was heard to say that "he must have revenge; put yourself in shape." Then Frith took off his coat, throwing it upon the fence, and immediately thereafter, Taliaferro drew a pistol, rushed upon Frith and struck him in the face with the gun, and Frith then drew his pistol and shot Taliaferro, who died as a result of the wounds thus received. The trial court directed a verdict for the defendant, which was approved by the Supreme Court, which says:

"From the inception of the difficulty, the deceased appears to have been the aggressor. He was the first to draw a deadly weapon, accompanying that action with the exclamation that 'he must have revenge; put yourself in shape.' This can be regarded in no other light than an invitation to a deadly encounter, in which the deceased voluntarily put his life at stake, and deliberately took the chances of getting killed. Where a person thus invites another to a deady encounter, and does so voluntarily, his death, if he sustains a mortal wound, cannot be regarded as accidental by any definition of that term which has heretofore been adopted."

The opinion cites and distinguishes the case of *Lovelace* v. *Travelers' Protective Assn.,* 126 Mo. 104 (28 S. W. 877, 47 Am. St. Rep. 638, 30 L. R. A. 209), which is the leading case apparently in conflict with the views expressed in the foregoing quotation.

In *Price* v. *Occidental Life Ins. Co.,* 169 Cal. 800 (147 Pac. 1175), a case was presented upon findings of fact, in which the details of the affray do not appear. The policy was in substantially the same form as that of the case at bar, and the court, sitting *in banc,* says:

"If it should appear that the killing had been the result of an encounter with deadly weapons, and that the deceased had himself invited and brought on such conflict, the fatal result would not have been accidental, so far as he was concerned."

The opinion quotes with approval from *Taliaferro* v. *Travelers' Protective Assn.,* 80 Fed. 368 (25 C. C. A. 494), and distinguishes *Lovelace* v. *Travelers' Protective Assn.,* 126 Mo. 104 (28 S. W. 877, 47 Am. St. Rep. 638, 30 L. R. A. 209), in these words:

"There the deceased had engaged in a quarrel, in the course of which he was killed, but it did not appear that he drew a weapon, or that he knew his opponent was armed."

The plaintiff in the case at bar contends that where the evidence discloses that the deceased was ignorant of the fact that his adversary was armed, the fatal result was accidental so far as it concerned him. In support of this position, he relies principally upon the case of *Lovelace* v. *Travelers' Protective Assn.,* already mentioned, and *Union Casualty Co.* v. *Harroll,* 98 Tenn. 591 (40 S. W. 1080, 60 Am. St. Rep. 873).

The facts of the Lovelace case are these: His contract of insurance promised indemnity for "death by accident." He was a commercial traveler, and on the

occasion of the alleged accident he came as a guest to the hotel where it occurred. He was a friend of the proprietor, who was sick that night, and no one was in charge of the office. A man named Graves was in the office, cursing and boisterous. Lovelace remonstrated with him, and an altercation ensued in which Graves challenged Lovelace to eject him, whereupon Lovelace slapped Graves and pushed him back until the latter struck the door, which was closed. Graves then drew a pistol and shot Lovelace, who died from the wounds inflicted. The opinion concludes thus: ·

"Whether he acted lawfully as a guest of the hotel, during the absence and illness of the proprietor, in attempting to remove Graves from the hotel office by force, we think needless to investigate. It may be assumed that, by his course of conduct, he voluntarily assumed the risks of a fight. But there is nothing in the circumstances to show that he voluntarily assumed the risk of death. We consider his killing an 'accident' in the popular and ordinary sense in which that word is generally used."

We are unable to agree with the eminent jurists who undertake to distinguish this case from the Taliaferro case upon the ground that Lovelace did not know his adversary was armed, nor do we think that anything in the opinion justifies the inference that such fact was a controlling factor. On the contrary we think the logic of the learned justice is based upon the fact that Lovelace himself was unarmed, or at least, did not exhibit any weapon, and therefore did not invite that *species* of combat. This theory is strengthened by the fact in the Taliaferro case, that Taliaferro could not have known that Frith was armed when the assault was made, for the latter did not draw his gun until after he had been struck in the face with the revolver of his enemy.

In the case of *Union Casualty Co.* v. *Harroll,* 98 Tenn. 591 (40 S. W. 1080, 60 Am. St. Rep. 873), the deceased was himself unarmed, and also ignorant of the fact that his antagonist had a pistol upon his person, upon these facts, and following the authority of the Lovelace case, the Supreme Court of Tennessee held that the death was accidental within the meaning of the terms used in the insurance contract.

It is not necessary, in this case, for us to determine whether or not, under any circumstances, the injuries sustained by the aggressor should be regarded as other than accidental, but we think it very clear that if a man deliberately assaults another, with a lethal weapon in his hand, such as a pistol, whether it be loaded or not, it cannot be said that the injuries he receives in the resulting struggle are accidentally received. The very act of assaulting another with a gun is an invitation to that other to resist unto death, and if the aggressor is killed, it is a natural and logical sequence of his own voluntary act.

The judgment of the lower court is affirmed.

<div align="right">AFFIRMED.</div>

McBRIDE, C. J., and BURNETT and HARRIS, JJ., concur.

---

<div align="center">

'Argued March 19, affirmed April 15, 1919.