**NORRIS et al. v. NEW YORK LIFE INS. CO.**

No. 3088.

Circuit Court of Appeals, Fourth Circuit.

April 13, 1931.

Lewis W. Lake, of Baltimore, Md., for appellants.

John T. Tucker, of Baltimore, Md. (Keech, Deming & Carman, of Baltimore, Md., on the brief), for appellee.

Before PARKER and NORTHCOTT, Circuit Judges, and WEBB, District Judge.

NORTHCOTT, Circuit Judge.

This is an action at law, brought by appellants, who will be here referred to as plaintiffs, against appellee, referred to herein as defendant, brought in the court of common pleas of Baltimore city, Md., and removed to the District Court of the United States for the District of Maryland. The action was brought upon insurance policies issued by defendant on the life of James J. Norris, in the sum of $25,000, with clauses providing for a payment equal to a double amount of the face of the policy for death in case of accident. On trial at the conclusion of the evidence for the plaintiff, on motion of attorney for the defendant, the trial judge directed a verdict for the defendant, upon which verdict judgment was entered, and from which action of the court this appeal was prosecuted. No evidence was offered on behalf of the defendant.

The insured owned a farm on the Patuxent river, and conducted a store thereon, and an adjoining farm was owned by the brother of the deceased, one J. Walter Norris, a public road dividing the two farms. In October, 1929, insured's son and a man, who was working for the insured, together with a colored man, left the insured's store in a truck. As the truck approached Walter Norris' place, he (Walter Norris) came out

of the house and hailed the truck. After the truck stopped, Walter Norris accused the employee of the insured, a man named Goldsborough, of telling a lie on him, which Goldsborough denied. During the altercation which followed, Goldsborough started to get out of the truck, when Walter Norris pointed a pistol at him. The evidence showed that Walter Norris was under the influence of intoxicants. When Walter Norris pointed the pistol at Goldsborough, the insured, having followed the truck up the road, approached his brother Walter, and told him to put the gun down, that he was not going to shoot anybody. Walter Norris, with the pistol in his hand and down by his side, started to walk backwards toward his house, where insured followed him. After they got inside the house, in some way the pistol was fired and the insured was instantly killed.

The double indemnity clause of the policies reads as follows: "Upon receipt of due proof that the death of the Insured resulted directly and independently of all other causes from bodily injury effected solely through external, violent and accidental cause, and that such death occurred within ninety days after sustaining such injury, subject to all the terms and conditions contained in Section 2 hereof."

 The sole question to be considered here is whether the death of insured resulted directly and independently of all other causes from bodily injury effected through an accidental cause. There have been a number of decisions on this question by the various courts, both state and federal. A study of these decisions leads us to the conclusion that the rule governing this class of cases is correctly stated to be that the cause is not accidental, if the insured, in doing what he did, should have foreseen the danger of being injured. That which cannot reasonably be expected to follow as the result of an act is accidental. In other words, an insured may not voluntarily assume the risk of that which it is apparent or should be apparent to him, acting as a reasonable man, would result in injury or death. Unless a reasonable man could reach a different conclusion as to a probable result of his conduct, there is no question for the jury. In a number of decisions this point has been thoroughly discussed: Mutual Life Insurance Company of New York v. Distretti, 159 Tenn. 138, 17 S. W.(2d) 11; Cory v. Woodmen Accident Company, 253 Ill. App. 20; Id., 333 Ill. 175, 164 N. E. 159; Travelers' Ins. Co. v. Seaver, 19 Wall. 531, 22 L. Ed. 155; Carroll Case (C. C. A.) 143 F. 271, 5 L. R. A. (N. S.) 657, 6 Ann. Cas. 955; Casualty Co. v. Harroll, 98 Tenn. 591, 40 S. W. 1080, 60 Am. St. Rep. 873; Travelers' Ins. Co. v. Randolph (C. C. A.) 78 F. 754; Lovelace v. Travelers' Protective Ass'n of America, 126 Mo. 104, 28 S. W. 877, 30 L. R. A. 209, 47 Am. St. Rep. 638; U. S. Mutual Accident Ass'n v. Barry, 131 U. S. 100–121, 9 S. Ct. 755, 33 L. Ed. 60. See, also, 1 C. J. 510, § 339; 1 C. J. 446, § 115.

This court has had occasion to construe similar clauses in insurance policies. Continental Casualty Co. v. Willis, 28 F.(2d) 707, 61 A. L. R. 1069, and Mutual Life Ins. Co. of New York v. Dodge, 11 F.(2d) 486, 488, 59 A. L. R. 1290. In the Dodge Case Judge Parker of this court, in a well-reasoned opinion, has gone into fully the meaning of the word "accidental," and says:

"'Accidental' is defined in Webster's Dictionary as 'happening by chance, or unexpectedly; taking place not according to the usual course of things; casual; fortuitous; as an accidental visit.' And in defining the term 'accidental means' Corpus Juris says: 'Where the effect is not the natural and probable consequence of the means which produce it—an effect which does not ordinarily follow and cannot be reasonably anticipated from the use of the means, or an effect which the actor did not intend to produce and which he cannot be charged with a design of producing—it is produced by accidental means.' 1 C. J. 427.

"Cooley's Briefs on Insurance, at page 3156, gives practically the same definition. Judge Sanborn, speaking for the Circuit Court of Appeals of the Eighth Circuit, says: 'An effect which is the natural and probable consequence of an act or course of action is not an accident, nor is it produced by accidental means. It is either the result of actual design, or it falls under the maxim that every man must be held to intend the natural and probable consequence of his deeds. On the other hand, an effect which is not the natural or probable consequence of the means which produced it, an effect which does not ordinarily follow and cannot be reasonably anticipated from the use of those means, an effect which the actor did not intend to produce and which he cannot be charged with the design of producing, * * * is produced by accidental means. It is produced by means which were neither designed nor calculated to cause it. Such an effect is not the result of design, cannot be reasonably anticipated, is unexpected, and

is produced by an unusual combination of fortuitous circumstances; in other words, it is produced by accidental means.' Western Com. Travelers' Ass'n v. Smith, 29 C. C. A. 223, 85 F. 401, 40 L. R. A. 653, approved in Ætna Ins. Co. v. Brand (C. C. A. 2d) 265 F. 6 [13 A. L. R. 657].

"Mr. Justice Blatchford, speaking for the Supreme Court of the United States, says: 'If a result is such as follows from ordinary means, voluntarily employed, in a not unusual or unexpected way, it cannot be called a result effected by accidental means; but if, in the act which precedes the injury, something unforeseen, unexpected, unusual occurs, which produces the injury, then the injury has resulted through accidental means.' Mutual Accident Ass'n v. Barry, 131 U. S. 100, 9 S. Ct. 755, 33 L. Ed. 60."

Applying the rule, as above stated, and as laid down by Judge Parker, to the evidence in the instant case, and viewing the evidence in the light most favorable to the plaintiff, as must be done on motion to direct a verdict, we are forced to the conclusion that there was sufficient evidence to take the case to the jury. Certainly, a reasonable man may not anticipate or foresee that his brother would shoot him, and such an act on the part of one's own brother is contrary to all preconceived ideas upon which reasonable men act. The case is entirely different from that where a man enters into an altercation with one whom he suspects of undue intimacy with his wife, or one who attacks an armed man in anger, or even one who pursues an armed criminal. Here the insured interfered in an altercation, evidently for the purpose of dissuading his brother from shooting another. He could not believe, nor would any reasonable man have believed, that his brother would shoot him. When his brother did shoot and kill him, it was within the meaning of the law an accidental cause. The judgment of the court below is reversed, with instructions to grant a new trial.

Reversed.