Horan, Jr. *v.* The Prudential Ins. Co. of America,
Appellant.

Argued December 14, 1931.

Before TREXLER, P. J., KELLER,
LINN, GAWTHROP, CUNNINGHAM, BALDRIGE and STADT-
FELD, JJ.

*Frederick J. Shoyer,* and with him *Kendall H. Shoyer,* for appellant, cited: Talliferro v. Trav. Pro. Assn. of America, 80 Fed. 368; Price v. Occidental Life Ins. Co., 169 Cal. 800, 147 Pac. 1175; Metropolitan Cas. Co. v. Champers, 136 Ark. 84, 206 S. W. 64.

*Hubert J. Horan, Jr.,* and with him *John F. Corcoran,* for appellee, cited: Taylor v. General Accident Assurance Corporation, Limited, 208 Pa. 439.

OPINION BY BALDRIGE, J., March 5, 1932:

This is an action on a life insurance policy. The question involved is whether death was the result, "directly and independently of all other causes, of bodily injuries, effected solely through external, violent and accidental means."

Shortly after midnight on November 30, 1928, a private watchman, in plain clothes, saw the insured, with four companions, "roaming" in an automobile in the neighborhood which he was guarding. He paid little attention to them until he saw them get out of the car at Third and South Streets, Philadelphia, and start toward South Street. He then walked to the car, looked in, and, by the use of his flashlight, saw New York license plates lying on the front seat, although there were Pennsylvania tags attached to the car. He followed the men, remaining 150 feet behind them. At 220 South Street, one of the group, later identified as the insured, walked into Levy's Sporting Goods Store doorway, which is about 20 or 25 feet deep with dis-

play windows on either side, containing firearms, jewelry, sporting goods, etc. In a moment this man returned to the pavement, joined his companions, and they continued down the street to 212 South Street, where there is the same kind of a store, and the insured again entered the doorway, the others remaining at the curb as before. The watchman walked rapidly toward them and the other four men started to run, the insured following behind 10 or 15 feet. The watchman shouted to them to halt, but instead of stopping they increased their speed, and thereupon he fired two warning shots in the air. By this time they turned north on Second Street, and shortly thereafter the insured "slowed down," partly turned, placed his hand in his hip pocket—then the watchman fired the fatal shot. The bullet entered his brain, causing almost instant death. When his body was picked up, it was discovered that he had in his hand a 32-calibre revolver.

The learned judge below, sitting without a jury, found for the plaintiff.

There is no dispute that the insured met his death through external and violent means, but was it by accidental means? The answer depends on whether the insured culpably provoked or induced the act which resulted in his death. If his death was the natural and probable consequence of his own act and should have been foreseen, it was not effected by accidental means: Erb v. Commercial Mut. Acc. Co., 232 Pa. 215.

In Price v. Occidental Life Ins. Co., 169 Cal. 800, 147 Pac. 1175, cited by appellant, the insured had provoked the assault which resulted in his death from a bullet wound inflicted by a third person. The court accordingly found that death did not result from accidental means. The appellate court, however, in the course of its opinion, stated: "The fact that the in-

sured was killed by a bullet from a firearm discharged by another person would, standing alone, justify, if not require, the inference that the killing was, as to the insured, accidental: Jenkin v. Mut. L. Ins. Co., 131 Cal. 121, 63 Pac. 180. But this is an inference which may be overcome by other evidence.'' The court held that the issue was for the fact finding body with the inference in favor of the plaintiff, which, there, was overcome by defendant's testimony.

In McKeon v. National Cas. Co., (Mo.) 270 S. W. 707, the facts are very similar to those in the instant case. The insured, who had a criminal record, was driving along the streets in St. Louis, when he was recognized by four members of the police force. Although the officers had no warrant, and had not seen him commit a crime, they called for him to stop. He increased the speed of his automobile, and then the pursuing officers fired a shot in the air. An exchange of shots followed and one of them hit and killed the insured. Defendant's contention, there, as here, was that the insured's death was not by accidental means within the meaning of the policy, because he culpably provoked or induced the act causing his death. The court held that the case was for the jury's determination. See also Union Cas. & Surety Co. v. Harroll, 98 Tenn. 591, 40 S. W. 1080; Johnson v. Cont. Guarantee Co., 115 Mich. 86, 72 N. W. 1115.

Whether one intentionally exposes himself to a risk is usually a question of fact for the jury and not for the court, as a matter of law: Union Cas. & Surety Co. v. Harroll, supra; Campbell v. Fidelity & Cas. Co. of New York, 60 S. W. 492; Johnson v. London Guarantee & Acc. Co., supra. There is no evidence that this insured was engaged in the commission of, or that the watchman knew that he had committed, a crime; he was not a fleeing felon. The record does not irrefutably show that the shooting was the probable con-

sequence of the insured's own act. His walking on the sidewalk, looking in windows, and then running away from a man attired as a civilian, firing a revolver, do not indicate that he was an aggressor, or that he was doing any voluntary act which reasonable prudence would have pronounced dangerous. He was endeavoring to escape from, rather than to provoke, an encounter. To sustain the appellant's contention that the death was the natural and probable result of his own conduct, we must conclusively presume that he was engaged in the commission of a crime, which is unwarranted by the facts. Certainly, the appellant would not have been entitled to binding instructions, if a jury had been sitting. We find no merit in the fifth assignment of error which complains of the trial judge's refusing to find, as a conclusion of law, that "under all the evidence, the verdict must be in favor of the defendant."

The first, second and third assignments relate to the exclusion of testimony that the companions of deceased had not been seen since the shooting by the private watchman, and that the car in which these men had been riding was stolen. There was no attempt to show, however, that the insured had stolen it, or that the watchman knew at the time of the shooting that the car was stolen.

The fourth assignment covers the rejection of evidence to prove that the watchman believed, when he hit the deceased, that he was acting in self-defense. If the watchman had been on trial, his motive may have been material (Com. v. Gormley, 77 Pa. Superior Ct. 298, 303), but it is not pertinent under the facts in this case. It was for the trial judge, sitting without a jury, to determine whether the death was the result of accidental means, independent of the watchman's intention or motive when he fired the last shot. Whatever induced the watchman's actions, death may

have been due to accidental means within the provisions of the policy, at least if it was not the result of misconduct on the part of the insured and was unforeseen by him: Cooley's Brief on Insurance, 6th Vol., 2d Ed., p. 5246. Under the watchman's testimony, when he fired, the insured was from 50 to 75 feet distant, moving in the opposite direction. The killing of this man, not known to be a felon, could not have been justified on the ground of self-defense alone. There must be actual, imminent peril of life, or of great bodily harm, or a reasonable belief, founded on facts as they appear at the time, without means of escape, to justify the taking of a life: Com. v. Mitchka, 209 Pa. 274. We can see no substantial error in excluding this testimony.

We have examined the other assignments of error and find them without merit.

Judgment affirmed.