O'Neill et al., Appellants, *v.* Metropolitan Life
Insurance Company.

Argued May 13, 1942. Before SCHAFFER, C. J.; MAXEY, DREW, STERN, PATTERSON and PARKER, JJ.

*Harry J. Alker, Jr.*, with him *Maxwell Strawbridge*, for appellants.

*Owen B. Rhoads*, with him *Joseph S. Clark, Jr., Barnes, Dechert, Price & Smith*, and *Harry Cole Bates*, for appellee.

OPINION BY MR. JUSTICE MAXEY, June 29, 1942:

This is an appeal from the refusal of the court below to grant plaintiffs a new trial. The plaintiffs, Eleanor F. O'Neill and Montgomery Trust Company, guardian of the estates of Mary K. O'Neill and Margaret E. O'Neill, minors, brought suit against the Metropolitan Life Insurance Company for $50,000, with interest from May 29, 1937. The claim was based on three policies of insurance, herein designated respectively as policies A, B, and C, insuring the life of Dennis A. O'Neill, husband of Eleanor F. O'Neill and father of the two minors above named, in the respective sums of $20,000, $25,000, and $5,000. Policy A was dated January 28, 1930; the other two policies were dated November 20, 1934. Attached to policy A was a "rider" agreeing to pay "to the bene-

ficiaries . . . in addition to the amount payable according to the terms of said policy" the sum of $20,000, "upon receipt . . . of due proof of the death of the insured, as the result, directly and independently of all other causes, of bodily injuries sustained through external, violent and accidental means, provided (1) . . . (2) . . . (3) . . . (4) . . . (5) . . . (6) that death shall not have resulted from bodily injuries sustained while participating in aviation or æronautics except as a fare-paying passenger, nor while the insured is in the · Military or Naval Service in time of war, nor as the result of violation of law by the insured." Policies B and C had "riders" attached to them containing the same provision as to paying additional amounts in the sums respectively of $25,000 and $5,000 upon the same "due proof of death through external, violent and accidental means, provided (1) . . . (2) . . . (3) . . . (4) . . . (5) . . . (6) that death shall not have resulted from bodily injuries sustained while participating in aviation or æronautics, except as a fare-paying passenger on a licensed aircraft operated by a licensed pilot, nor sustained while or as a result of participating in or attempting to commit an assault or felony, nor sustained while the insured is in the Military or Naval Service in time of war."

Plaintiffs' statement of claim sets forth, inter alia: "The said Dennis A. O'Neill died on May 29, 1937, in his thirty-eighth year, while the policies and supplemental contracts thereto were in full force and effect, . . . The said death was due directly and independently of all other causes to bodily injuries sustained through external, violent and accidental means, and was not the result of self destruction, or caused by or contributed to, directly or indirectly, or wholly or partly, by disease, or by bodily or mental infirmity, and did not result from bodily injuries sustained while participating in aviation or æronautics, nor sustained while or as a result of participating in or attempting to commit an assault or fel-

ony, nor while the insured was in Military or Naval Service in time of war, nor as the result of violation of law by the insured.

Due proofs of the insured's death were filed with the defendant and the face of the policies totaling $50,000 was paid to the plaintiffs but payment of the additional total sum of $50,000 claimed was refused."

At the trial the widow plaintiff testified that during the early morning of May 29, 1937, she and her husband returned to their home in Norristown after having spent the preceding hours at an Inn. She and her husband then quarrelled and after "pushing him away" she went to the side porch of their home. She then heard one of her children crying upstairs and she ascended the stairway and there noticed blood on the wall. She met her father and from what her father told her she "realized her husband was hurt" and she then summoned a physician. She then saw her husband "lying on the floor unconscious". Shortly after the physician arrived, her husband died.

Mrs. O'Neill's father, Joseph J. McGinley, who was sixty-nine years of age at the time of the insured's death, testified that on the morning above identified he "heard a noise" and "rushed out of" his room to the hallway. "It was dark" and the witness' eyes were "not so good". He "became excited . . . thinking it might be a kidnapping or robbery". He "rushed back to his room and turned on the light", picked up his razor and "started pell-mell for the first floor". He added: "Near the top of the steps I ran into an object. I did not know who it was. I could not see in the dark." He and a man "grabbed each other" and "both went down twelve flights of steps head over heels." He said: "I was lying on the broad of my back . . . and Dennis O'Neill was lying on my feet. I was the heaviest of the two." A short time later O'Neill went to the living-room and the witness went upstairs and shortly afterwards the doctor came and told the witness "that O'Neill was dead".

Dr. McCarthy described the fatal wound as "a four inch gash in his neck, exposing [on the left side] the

carotid artery, which was severed", resulting in a hemorrhage.

On cross-examination both Mrs. O'Neill and her father were asked if they had not within an hour or two of O'Neill's death given an entirely different version of this tragic happening. The other version as allegedly given to H. A. Cressman, reporter for the Norristown Times-Herald, and to others was that O'Neill had become intoxicated at Bungalow Inn and had quarrelled with Mrs. O'Neill. He had driven her home, ordered her out of the car and he then drove away. Later after Mrs. O'Neill had undressed, O'Neill returned and in a belligerent mood, called to his wife to come downstairs. She refused to do so. She finally went downstairs, to try to quiet her husband. He struck her and put her out of the house, though she was clad only in undergarments. McGinley had awakened and heard O'Neill strike Mrs. O'Neill and heard him declare he was going upstairs to put McGinley out of the house. McGinley then seized his razor in self-protection and stood at the top of the stairs. After O'Neill struck McGinley twice in the face, despite the latter's remonstrance, McGinley in self-defense struck at O'Neill, causing the fatal injury described. Witnesses Harper, Murphy, Eiler and Flynn gave testimony substantially similar to Cressman's. Edward Murphy, an investigator for the defendant company, testified that in a conversation with Mrs. O'Neill on or about August 26, 1937, in which she told him about her husband's "pushing her down the stairs" on the morning in question and "striking her twice very severely and put her outside" and that he threatened to "go upstairs and get that old man of yours and put him out too." Witness McGlathery testified that when O'Neill left the Inn on the morning in question "he felt his drinks" and "talked very nasty, seemed to be provoked". The jury found for the defendant.

Appellant complains that the trial judge did not submit this case to the jury under proper instructions. The

fifth assignment of error is based upon the instruction to the jury that "the plaintiffs must [in respect to policies B and C] show to your satisfaction by a preponderance of the evidence that Dennis A. O'Neill in each of the policies as the provisions read, did not die while or as a result of participating in or attempting to commit an assault or felony" and [in respect to policy A] that death was not "the result from bodily injuries . . . or violation of law" by the insured.

Recovery of the sums sued for in this case required proof of the death of the insured, "as a result, directly and independently of all other causes, of bodily injury sustained through external, violent and accidental means". In *Watkins v. Prudential Insurance Co.*, 315 Pa. 497, 512, 173 A. 644 (where death "through external, violent and accidental means" was claimed) we held that "on plaintiff rests the burden of proving all the operative facts by a fair preponderance of the evidence." In *Erb v. Commercial M. Acc. Co.*, 232 Pa. 215, 81 A. 207, this court declared that "the death of an insured would not be effected by accidental means if it were the natural and probable consequence of his own act, and should have been foreseen." In *Horan, Jr., v. Prudential Ins. Co. of Am.*, 104 Pa. Superior Ct. 474, 159 A. 69, the Superior Court in an opinion by Judge BALDRIGE stated that in a case where the question is: Did the insured meet his death "by accidental means"?[1] "the answer depends on whether the insured culpably provoked or induced the act which resulted in his death". In *Camp. Ad. v. Prud. Ins. Co. of A.*, 107 Pa. Superior Ct. 342, 348, 163 A. 320,

---

[1] "There is a well-defined distinction between a death resulting from an accident and one resulting from accidental means. As is well said in 3 Joyce on Insurance, sec. 2863, p. 208: 'A person may do a certain act the result of which act may produce unforseen consequences, and may produce what is commonly called accidental death, but the means are exactly what the man intended to use, and did use, and was prepared to use. The means were not accidental, but the result might be accidental.'": Fidelity & Casualty Co. v. Stacey's Exr's., 143 Fed. 271, 274.

there was cited with approval the case of *Taliaferro v. Travelers' Protective Association of America*, 80 Fed. 368, holding that where the insured brings about an assault upon himself by his own wrongful act, or where he, under such circumstances that he would naturally be presumed to know that the injury is likely to be inflicted, voluntarily incurs an obvious hazard of this character, or places himself in a position that may be reasonably expected to bring about an assault upon him, the injury so received is not effected by accidental means.

In *Hutton v. States Accident Ins. Co.*, 267 Ill. 267, 108 N. E. 296, it was held that the insured in a "death from accidental means policy was bound to know that one of the natural and probable consequences of voluntarily engaging in an assault . . . was that he might be injured, although he could not, of course, foresee the exact form of the injury he might receive, or, indeed, be able to know certainly that he would be injured at all. . . . ; the injury which he received as a result cannot be said to have been caused by accidental means." In *Rousseau v. Metropolitan Life Ins. Co.*, 11 N. E. (2d) 921, the Supreme Judicial Court of Mass. held that where insured and others stole an automobile, and the automobile left the road in the course of escape and pursuit because of its high speed, and insured was killed, his death was not sustained by "accidental means" so as to authorize recovery of additional death benefits under life policies.[2]

"Death from accidental means" being what the foregoing cases state it to be, plaintiffs had the burden the court below cast upon them. Furthermore, by their pleadings the plaintiffs assumed the burden of proof, as the quotation, supra, from the statement of claim shows. The affidavit of defense accepted the issue tendered by

---

[2] *Prudential Casualty Co. v. Curry*, 65 So. 852, 853, 10 Ala. App. 642. *Koester v. Mutual Life Ins. Co. of New York*, 179 A. 327, 329, 6 W. W. Harr 537. *Braldi v. North American Accident Ins. Co.*, D. C. Cal., 20 F. Supp. 735, 736, are all in accord.

denying the plaintiffs averments as to the insured's non-violation of law, etc. "The fundamental principle is that the burden of proof in any cause rests upon the party who as determined by the pleadings or the nature of the case asserts the affirmative of an issue, . . . One alleging a fact which is denied has the burden of establishing it. . . . The affirmative of an issue, as thus used, includes any negative proposition which the person asserting the affirmative may have to show.": 20 Am. Jur. sec. 135, pgs. 138-9. See also *Lillie M. Otto, Adm., v. Western Saving Fund Society,* 343 Pa. 615, 23 A.2d. 462.

In *Real Est. Trust Co. v. Metropolitan Life Ins. Co.,* 340 Pa. 533, 17 A.2d. 416, this court held that in an "accidental death" policy which provided that "this indemnity shall not be payable if the death of the insured results . . . from disease or from bodily or mental infirmity" the plaintiff has the burden of showing that the death of the insured was caused solely by accidental means, and that it was not produced directly or indirectly by disease or bodily infirmity." In accord: *Harrison v. New York Life Ins. Co.,* 78 Fed. (2d) 421.

Appellant relies on the case of *Bowers v. Great Eastern C. Co.,* 260 Pa. 147, 103 A. 536. There the insured. named in an accident policy for $5,000 lost his life in an automobile accident allegedly due to the excessive speed of the car. The beneficiary in filing her statement of claim simply pleaded to fact of the existence of the policy, attaching it to her statement of claim and averred that her husband "was killed on August 27, 1913, while the said policy was in force and that she furnished the defendant with good and sufficient proof of the death of" the insured. The policy contained a provision that "this insurance does not cover injuries fatal or otherwise" resulting from the insured "being affected by intoxicants . . . [or from] unnecessary exposure to obvious danger [or from] violating law." The affidavit of defense averred that the "insured's death resulted from his unnessary exposure to danger" and that he "was killed

operating a motor vehicle while intoxicated, . . . this constitutes an unlawful act within the prohibition of the policy and by reason thereof plaintiff cannot recover." The jury returned a verdict in favor of the plaintiff. Nothing was said in the charge of the court as to where the burden of proof lay on any phase of the case. The issues litigated were the allegation of the insured's intoxication, the excessive speed of the car and, chiefly, "did the violation of law by driving at an unlawful speed have a necessary connection with the accident". Neither in "the statement of questions involved" nor in the assignments of error was there the slightest reference to the question of burden of proof. On appeal to this court the judgment of the court below was affirmed. Appellant's contention that *any* intoxication of the insured while driving the car avoided the policy was rejected and it was held that the intoxication in order to avoid the policy must have been such as to affect "the assured's ability to operate the car". This court said: "The burden resting on the company in the matter of proof is not discharged by merely showing that shortly before the accident the insured had indulged in intoxicants, proper and competent as such evidence would be, but, except as the evidence goes further and establishes facts warranting a conclusion that the accident occurred as a consequence or result of the assured having taken intoxicants, the defense must fall." It was also said: "The defense being affirmative in character, the defendant assumed the burden of showing that the assured, when the accident occurred, was affected by intoxicants, was violating law and exposing himself to unnecessary danger."

What this court there said about burden of proof was dictum; it was said on an issue not raised and on a matter not involved. If the *defense* was "affirmative in character" it was because the parties by *their pleadings* made it so; the parties *here* did otherwise, as is pointed out above. Furthermore, a defense affirmative in character

does not always cast the burden of proof upon a defendant. Wigmore on Evidence, 3rd. ed., vol. 9, sec. 2486, p. 274, says: "It is often said that the burden is upon the *party having in form the affirmative allegation.* But this is not an invariable test, nor even always a significant circumstance; the burden is often on one who has a negative assertion to prove; a common instance is that of a promisee alleging non-performance of a contract." Another example is found in actions for malicious prosecution where a plaintiff must show want of probable cause for his having been prosecuted. See *Altman v. Standard Refrig. Co., Inc.,* 315 Pa. 465, 477, 173 A. 411, where we said: "Though such allegation [want of probable cause] is a negative one . . . , the burden is upon the plaintiff to prove [it] affirmatively."

Appellants also quote in support of their position what we said in *Watkins v. Prudential Ins. Co.,* supra, at p. 508 as follows: "When a defendant seeks to avail itself of the substantive defense reserved in the policy that the loss was due to a cause or risk *specifically excepted in the policy,*[3] the defense becomes an affirmative one and has the burden of proof." We made a similar statement in *Zenner v. Goetz (Travelers Ind. Co., Aplnt.),* 324 Pa. 432, 435, 188 A. 124. We also said in the cases cited: "Accidental death is in such cases an operative fact and on plaintiff there always rests the duty of proving all such facts in order to recover on a contract [of insurance]." Under the cases we have earlier cited, plaintiffs had to prove that the insured did *not* culpably provoke the act which resulted in his death. If they failed to prove this fact they did not meet the burden of proving the operative facts of the policy sued

---

[3] The applicable provisos in the policies sued upon, which provisos plaintiffs claim cast the burden of proof upon the defendant, merely put *expressly* in the policies what under the decisions herein quoted were *already there by law.* "Existing laws giving rights to parties to a contract or limiting their rights, become a part of the contract as though specially set forth therein": *Hutchinson v. Ward,* 114 N. Y. App. Div. 156, 99 N. Y. S. 708.

upon. "Proof of the nature of the occurrence resulting in death is an essential part of plaintiff's claim for double indemnity" in cases in which death from accidental means is pleaded: *New York Life Ins. Co. v. Ollich*, 6 C. C. A. 42 Fed. (2d) 399. In the instant case the proof of the nature of the fatal occurrence offered by the plaintiffs was such as might reasonably lead the jury to decide that the burden of proof[4] resting upon plaintiffs had not been met. This was the situation at the close of plaintiffs' direct testimony as well as after Mrs. O'Neill and her father had been cross-examined, and after it was testified to by other witnesses that shortly after the fatal occurrence a version of it had been given out by Mrs. O'Neill and her father which showed that the insured had made threats to "get that old man of yours" (meaning Mr. McGinley), and that "Dennis [the insured] reached for the razor and then fell down stairs and in the fall Dennis was . . . slashed in the throat", the jury was warranted in reaching the conclusion that the insured's death was *not* "the result of bodily injuries sustained through . . . accidental means".

---

[4] The decisions on the question whether or not a plaintiff in actions based on insurance contracts like or similar to this one now before us must assume the burden of showing that the cause of action does not fall within the excepting clauses of the contract are in conflict in various jurisdictions. This conflict is well defined by the Supreme Court of Texas in Travelers Ins. Co. v. Harris, 212 S. W. 933, as follows: "Those courts which treat the contracts as being general, and the clauses declaring what they shall not cover as 'stipulations added to the principal contract to avoid the promise of the insurer by way of defeasance or excuse,' hold that these clauses are defensive, and must be pleaded and sustained by the insurer; while the courts which construe the exception clauses as 'taking something out of the general portion of the contract, so that the promise is to perform only what remains after the part excepted is taken,' place the burden of pleading and proof upon the assured to negative them by showing that his cause of action does not come within the exception." Under the interpretation of "death as the result of bodily injuries sustained *through accidental means*", prevailing in Pennsylvania, there is no occasion for any confusion or conflict as to where the burden of proof lies in cases like the one now before us.

The first, seventh, eighth, and ninth assignments of error are based on the court's instructions as to the alleged unlawfulness of the insured's conduct at the time in question. The court said: "His acts, if you believe the witnesses for the defendant company, were in violation of law and constituted an assault or an attempt to commit an assault." Appellants argue that "before the insured can be said to be guilty of a felony, or an assault, or violation of law within the meaning of the policies, he must have been such an aggressor that he could reasonably foresee that as a result of his own actions it was likely that he would be killed. Considering the evidence it is apparent that the insured in the present case was not such an aggressor." We cannot agree that the evidence does not show the insured to have been the aggressor on the morning in question. It was *his* acts which caused his father-in-law to believe that "a kidnapping or robbery" was taking place downstairs and to pick up his razor and open it, "thinking there was something radically wrong". Nor can we agree that in order to adjudicate the insured as a violator of law within the meaning of the policies, he had to be so aggressively lawless as to make him "reasonably foresee that as a result of his own actions it was likely he would be killed". If he had foreseen the tragic consequences of his acts, it is reasonable to believe he would have desisted from them. No one contends that the insured intended to invite his own destruction. Persons who drive automobiles at a lawless and excessive rate of speed usually do not intend to kill themselves, but nevertheless if their death does result from such an action, it cannot be contended that they were not engaged in a lawless act. "To avoid liability [in a case like this] it must be established that the violation of law was the cause of, or had some causative connection with the accident": Couch Encyclopedia of Ins. Law, Vol. 6, p. 4512, sec. 1736. *Wells v. New England M. L. Ins. Co.*, 191 Pa. 207, 43 A. 126. *Travellers Ins. Co. v. Seaver*, 19 Wall 531. In the instant case

"the causative connection" of the insured's unlawful conduct "with the accident" was a legitimate inference for the jury to draw.

The sixth and seventh assignments of error are based upon excerpts from the charge which according to appellants amounted to a submission of the defendant's testimony to the jury "with the same weight and value as plaintiffs". We see no merit in these assignments. The trial judge made it clear to the jury that the credibility of the witnesses was "the most important question in this case". The testimony of the witnesses called by the defense to show that Mrs. O'Neill and her father had given versions of this fatal affair which varied from the story they told on the witness stand and which was less favorable to plaintiffs' claim was competent to affect the credibility of these two witnesses. The verdict of the jury indicates that it concluded that plaintiffs had failed to meet the burden of proof resting upon them, and we find that on this record the verdict was contrary to neither the law nor the evidence.

All the assignments of error are overruled.

The judgment is affirmed.